# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 19-5821 PSG (MAAx) | Date | February 27, 2020 |
|---|---|---|---|
| Title | Michael Watkins et al. v. Woodridge Productions, Inc. et al. | | |

Present: The Honorable    Philip S. Gutierrez, United States District Judge

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):    The Court DENIES the motion to remand**

      Before the Court is Plaintiffs Michael Watkins ("Watkins") and Watkins Productions, Inc.'s (collectively, "Plaintiffs") motion to remand.  *See* Dkt. # 29 ("*Mot.*").  Defendants Woodridge Productions, Inc. ("Woodridge"), Sony Pictures Entertainment Inc. ("Sony"), Laura Benson, William Roe, and Jordan Feiner (collectively, "Defendants") oppose, *see* Dkt. # 31 ("*Opp.*"), and Plaintiffs replied, *see* Dkt. # 34 ("*Reply*").  The Court finds the matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); L.R. 7-15.  Having considered the moving, opposing, and reply papers, the Court **DENIES** the motion.

## I.    Background

### A.    The Complaint

      The following facts are taken from Plaintiffs' complaint.  Plaintiff Watkins is a successful Hollywood cinematographer, director, and producer.  *See First Amended Complaint*, Dkt. # 1-5 ("*FAC*"), ¶¶ 1, 14.  Watkins alleges that in 2012 he accepted an offer from Defendants Woodridge and Sony to help launch a new television show, *The Blacklist*, and served as the Executive Producer and Main Director on the show.  *Id.* ¶ 16.  Defendants Sony and Woodridge[1] leadership "repeatedly represent[ed] to Watkins that he could stay as long as he liked," and Watkins "relied on these assurances as he turned down other job opportunities."  *Id.* ¶ 17.  Watkins was ultimately fired based on an alleged altercation with a male camera assistant.  *Id.* ¶ 18.  However, this justification for his termination was a ruse, and in fact Watkins did not commit the assault; Watkins was fired without the benefit of an investigation or other process.  *Id.* ¶¶ 19–20.  Subsequently, Defendants Woodridge and Sony published false and damaging

---

[1] Woodridge is a subsidiary of Sony.  *FAC* ¶ 5 n.1.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-5821 PSG (MAAx) | Date | February 27, 2020 |
|---|---|---|---|
| Title | Michael Watkins et al. v. Woodridge Productions, Inc. et al. | | |

statements about Watkins in relation to the alleged assault, and as a result he was "blackballed" from other productions. *Id.* ¶¶ 22–23.

Plaintiff initiated this action against Defendants on February 14, 2019, and subsequently filed a First Amended Complaint, bringing the following causes of action:

First Cause of Action: Breach of implied contract. *See id.* ¶¶ 29–33.

Second Cause of Action: Failure to conduct investigations. *See id.* ¶¶ 34–41.

Third Cause of Action: Breach of implied covenant of good faith and fair dealing. *See id.* ¶¶ 42–49.

Fourth Cause of Action: Tortious interference with contractual relations. *See id.* ¶¶ 50–55.

Fifth Cause of Action: Defamation per se. *See id.* ¶¶ 56–64.

Sixth Cause of Action: Intentional infliction of emotional distress. *See id.* ¶¶ 65–70.

B.     The Removal

On July 5, 2019 the action was removed to this Court. *See Notice of Removal*, Dkt. # 1 ("*NOR*"). The Notice of Removal alleges that jurisdiction in this Court exists pursuant to federal question jurisdiction, because Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141 et seq., preempts Plaintiff's claims. *See id.* ¶¶ 1–19. According to the Notice of Removal, Defendant Woodridge and the Director's Guild of America, Inc. ("DGA"), a labor organization, are parties to a collective bargaining agreement, known as the Directors Guild of America, Inc. Basic Agreement ("Basic Agreement" or "CBA"). *See id.* ¶ 8; *Declaration of Mark A. Wasserman*, Dkt. # 2 ("*Wasserman Decl. I*"), ¶ 12; Dkt. # 1-11 at 7; *Declaration of Mark A. Wasserman*, Dkt. # 31-1 ("*Wasserman Decl. II*"), ¶ 2, Ex. 1 ("*Basic Agreement*").[2] The Basic Agreement is a multi-employer agreement that covers work done by

---

[2] The Court may "properly look[] beyond the face of the complaint to determine whether the contract claim was in fact a [S]ection 301 claim for breach of a collective bargaining agreement, 'artfully pleaded' to avoid federal jurisdiction." *Young*, 830 F.2d at 997.

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-5821 PSG (MAAx) | | Date | February 27, 2020 |
|---|---|---|---|---|
| Title | Michael Watkins et al. v. Woodridge Productions, Inc. et al. | | | |

directors in the entertainment industry.[3]  *NOR* ¶ 8.  Plaintiff was hired by Woodridge pursuant to the terms of the Basic Agreement, and was employed as a Director on *The Blacklist*, a position governed by the Basic Agreement.  *Wasserman Decl. I* ¶ 11; Dkt. # 1-10 ("*Director's Deal Memorandum*").  The only capacity in which Plaintiff was employed by Woodridge at the time of the events described in the FAC was the director's position that is part of the bargaining unit represented by the DGA and covered by the Basic Agreement.  *NOR* ¶ 9.

Pursuant to the CBA, Defendant Woodridge set forth the terms and conditions of Plaintiff's employment in "Deal Memorandums."  *See Director's Deal Memorandum*.  In February 2018, Watkins entered into his last Deal Memorandum, specifying the terms of his employment as Director for a guaranteed period of fifteen days.  *See id.*  This Deal Memorandum explicitly incorporated the terms of the Basic Agreement, by: (1) expressly providing that Watkins' employment was subject to the Basic Agreement; (2) providing that the Deal Memorandum would be submitted to the DGA pursuant to requirements set forth in Basic Agreement Article 4-108; (3) authorizing Woodridge to deduct from Plaintiff's salary "the amount specified in the [Basic Agreement] as [his] contribution to the [DGA]"; and (4) providing that Woodridge "reserve[d] the right to discharge [Watkins] at any time subject only to the obligation to pay the balance of any compensation due, to the extent required by the DGA Basic Agreement, to which [his] employment is subject."  *Id.*; *NOR* ¶ 11.

Plaintiff now moves to remand the action to state court.  *See generally Mot.*

---

[3] The Notice of Removal states that the CBA set the terms and conditions of Watkins' employment including by prescribing minimum salaries and "guaranteed days" of employment based on type of project for which services are rendered; setting forth the employer's rights and obligations with respect to the termination of Directors; providing ways in which the employer may satisfy its obligation to furnish employment for a "guarantee[d]" period in instances in which a Director is discharged, including through payment of the agreed-upon salary for the applicable guaranteed period; setting forth requirements for the replacement of a Director on a particular project; setting forth an employer's right to offset salary obligations for Directors discharged during a period of "guaranteed" employment; setting forth requirements and specific layoff provisions for certain contracts that are of durations of twenty-six (26) weeks or longer; expressly requiring all agreements between an employer and a Director to be memorialized in a "Deal Memorandum" and forwarded to the DGA, and specifying the form that such Deal Memorandum must take; and subjecting certain employment disputes to arbitration, including, but not limited to, compensation-related claims.  *NOR* ¶ 11.

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-5821 PSG (MAAx) | Date | February 27, 2020 |
|----------|------------------------|------|-------------------|

| Title | Michael Watkins et al. v. Woodridge Productions, Inc. et al. |
|-------|--------------------------------------------------------------|

## II.    Legal Standard

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (internal quotation marks omitted). Under 28 U.S.C. § 1441, a defendant may remove a civil action from state court to federal district court only if the federal court has subject matter jurisdiction over the case. *See City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997) ("The propriety of removal thus depends on whether the case originally could have been filed in federal court."). The case shall be remanded to state court if at any time before final judgment it appears a removing court lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c); *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 87 (1991). Courts strictly construe the removal statute against removal jurisdiction. *See Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009); *Luther v. Countrywide Home Loans Servicing, LP*, 533 F.3d 1031, 1034 (9th Cir. 2008). "A defendant seeking removal has the burden to establish that removal is proper and any doubt is resolved against removability." *Luther*, 533 F.3d at 1034; *see also Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) ("[A]ny doubt about the right of removal requires resolution in favor of remand.").

## III.    Discussion

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). "A state action cannot be removed to federal court based on a federal defense, even that of preemption . . . but it can be removed if completely preempted: the preemptive force of a statute may be so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 996–97 (9th Cir. 1987) (cleaned up) (quoting *Caterpillar, Inc.*, 482 U.S. at 393). "[T]o remove a state law claim to federal court under the complete preemption doctrine, federal law must both completely preempt the state law claim and supplant it with a federal claim." *Id.* at 997.

The LMRA is one of only a handful of statutes that the Supreme Court has held completely preempts state law. Therefore, "[i]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is pre-empted" and the federal courts have jurisdiction over the claim. *Lingle v. Norge Div. of Magic Chief, Inc.*, 486 U.S. 399, 405–06 (1988). Section 301(a) of the LMRA provides federal jurisdiction

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-5821 PSG (MAAx) | | Date | February 27, 2020 |
|----------|------------------------|---|------|-------------------|
| Title | Michael Watkins et al. v. Woodridge Productions, Inc. et al. | | | |

over: "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act[.]" 29 U.S.C. § 185(a).

The Ninth Circuit has articulated a two-part test to determine whether a state law claim is preempted by the LMRA. First, the court must determine whether the cause of action is based upon a right conferred on an employee by virtue of state law or by the CBA between the employee and the employer. *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). If the right upon which the cause of action is based is conferred solely by the CBA, the claim is preempted and the inquiry ends there. *Id.* However, if the right exists independently of the CBA, the court must then consider whether the claim is substantially dependent on an analysis of the CBA. *Id.* (citing *Caterpillar Inc.*, 482 U.S. at 394). To make this determination, the court considers whether the claim requires the court to interpret the terms of the CBA or merely to "look to" the terms of the agreement. *Id.* (citing *Livadas v. Bradshaw*, 512 U.S. 107, 122 n.16 (1994); *Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063, 1065 (9th Cir. 2000)). The central question is whether the meaning of the contract terms is in dispute: if the parties dispute the meaning of the relevant provisions of the agreement, the claim is likely preempted; conversely, if the parties do not dispute the meaning of the terms of the agreement, the claim is likely not preempted. *See Livadas*, 512 U.S. at 124–25; *see also Burnside*, 491 F.3d at 1060 ("For example, we know that neither looking to the CBA merely to discern that none of its terms is reasonably in dispute, nor the simple need to refer to bargained-for wage rates in computing [a] penalty, is enough to warrant preemption.") (internal quotation marks and citations omitted); *Firestone*, 219 F.3d at 1065 ("When the meaning of particular contract terms is not disputed, the fact that a collective bargaining agreement must be consulted for information will not result in § 301 preemption."). Where a claim can be litigated under state law alone, it is independent of any CBA and not preempted by § 301. *Lingle*, 486 U.S. at 409–10.

Here, Defendant asserts, and Plaintiff does not dispute, that at the time of his discharge Plaintiff occupied a bargaining unit position and a collective bargaining agreement covered that position. *See generally Mot.*; *Opp*. The Court now addresses whether Plaintiff's claims are preempted by § 301 of the LMRA by virtue of the CBA.

A.    Breach of Implied Contract Claim

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-5821 PSG (MAAx) | Date | February 27, 2020 |
|----------|------------------------|------|-------------------|
| Title | Michael Watkins et al. v. Woodridge Productions, Inc. et al. | | |

Plaintiff's first cause of action is for breach of implied contract.[4]  Watkins alleges that he was discharged from employment in violation of a side contract between him and Defendants Woodridge and Sony, which was distinct from the CBA.  *See generally Mot.*  He alleges that separate and apart from the CBA, he and Defendants Woodridge and Sony entered into an implied contract that guaranteed Watkins continued employment for "as long as he liked" absent "just cause" for his removal, and that Defendants breached this implied contract.  *See FAC* ¶¶ 17, 19, 21, 30–33.

First, Watkins argues that his breach of implied contract claim arises from state law, not from the CBA.  He argues that this involves rights conferred by state law because the complaint does not mention the CBA.  *See Mot.* 7.  And because his implied contract claim is wholly separate from the CBA, he argues, Section 301's preemptive scope does not encompass his claims, *see id.* 7:1–10.  Defendants argue that Watkins' alleged implied contract can only be effective as part of the CBA and that the right exists solely as a result of the CBA, *see Opp.* 5:18–25.

Defendants point to several Ninth Circuit cases considering this issue.  For instance, in *Aguilera v. Pirelli Armstrong Tire Corp.*, the Ninth Circuit concluded that Section 301 preempted breach of contract claims stemming from alleged independent contracts between appellants, who held positions covered by a collective bargaining agreement, and their former employer.  223 F.3d 1010, 1014–16 (9th Cir. 2000).  The appellants contended that these side agreements promised appellants that they would not be discharged, and that these agreements existed separate and apart from the collective bargaining agreement.  *Id.*  The Ninth Circuit explained that where the employment position in dispute "is covered by the CBA, the CBA controls and any claims seeking to enforce the terms of [an agreement] are preempted," and, moreover, that "state law based contract claims arising from alleged pre-employment misrepresentations [are] preempted by § 301 when the employee is subsequently hired under a CBA."  *Id.* at 1015–16.  Because the employer "acted in accordance with its contractual duties under the CBA when it laid off the appellants and these duties are allegedly inconsistent with the

---

[4] "The essential elements of a claim of breach of contract, whether express or implied, are the contract, the plaintiff's performance or excuse for nonperformance, the defendant's breach, and the resulting damages to the plaintiff."  *Green Valley Landowners Ass'n v. City of Vallejo*, 241 Cal. App. 4th 425, 433 (2015).  An implied contract "must be founded upon an ascertained agreement of the parties to perform it," and such agreement "may be inferred from the conduct . . . of the parties."  *Friedman v. Friedman*, 20 Cal. App. 4th 876, 887 (1993).

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-5821 PSG (MAAx) | Date | February 27, 2020 |
|---|---|---|---|
| Title | Michael Watkins et al. v. Woodridge Productions, Inc. et al. | | |

appellants' individual employment contracts, the CBA's terms control" and their claims were preempted. *Id.* at 1016.

Similarly, in *Chmiel v. Beverly Wilshire Hotel Co.*, the employee brought state law claims including for breach of contract against his former employer, arguing they had entered into an independent express or implied-in-fact contract, providing that the employee would not be discharged absent good cause. 873 F.2d 1283 (1989). The collective bargaining agreement, pursuant to a sideletter agreement, provided that the employee was a "probationary employee" whom the employer had the absolute right to discharge, and the collective bargaining agreement provided that employees were not permitted to enter individual contracts or agreements with the employer varying the conditions of employment. *Id.* at 1285–86. The Ninth Circuit concluded, that "[s]ince [the employee's] independent contract claim concerns a job position governed by the collective bargaining agreement, it is completely preempted by section 301." *Id.* at 1286; *see also Young*, 830 F.2d at 997–98 (alleged independent contract between employee and employer regarding reinstatement controlled by CBA because employee held a position covered by CBA); *Stallcop v. Kaiser Found. Hosps.*, 820 F.d 1044–48 (9th Cir. 1987) (same).

Defendants argue that like those cases, here, Plaintiff alleges a side contract that guaranteed him continued employment, while Plaintiff held a position covered by a collective bargaining agreement. Applying the reasoning of *Young* and *Aguilera*, Defendants argue that the CBA controlled the terms and conditions of Plaintiff's employment in his position, and any alleged independent contract "c[an] be effective only as part of the [CBA]." *Young*, 830 F.3d at 997; *Aguilera*, 223 F.3d at 1016. Some courts that have considered the issue have determined, relying on these decisions, that "any contract extrinsic to the CBA but which covers the same employment relationship as the CBA is preempted." *Garcia v. Rite Aid Corp.*, No. CV 17–02124 BRO (SKx), 2017 WL 1737718, at *5 (C.D. Cal. May 3, 2017) (collecting cases); *Bachilla v. Pac. Bell Tel. Co.*, No. Civ. S-07-739 RRB KJM, 2007 WL 2825924, at *5 (E.D. Cal. Sept. 25, 2007) ("Here, Plaintiffs assert that their implied labor contracts are independent of the CBA and therefore their contract claim is not a claim for breach of the CBA. However, because the subject matter of their implied contracts is a job position covered by the CBA, any independent agreement of employment concerning that position could be effective only as part of the collective bargaining agreement, thus the CBA controls and Plaintiffs' contract claim is preempted."). However, other courts have construed these cases more narrowly: rather than suggesting that state law claims for breach of separate contracts are subject to § 301 preemption based purely on the existence of a CBA, preemption occurs where there were disputed CBA terms at issue or direct conflicts with the CBA. *See Herrera v. Perez*, No. CV 12-1101 CAS (AGRx), 2012 WL 1044302, at *3, n.1 (C.D. Cal. Mar. 27, 2012); *Boccignone v. Sutter*

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-5821 PSG (MAAx) | Date | February 27, 2020 |
|---|---|---|---|
| Title | Michael Watkins et al. v. Woodridge Productions, Inc. et al. | | |

*Healthcare, et al.*, No. C 07-06243 CRB, 2008 WL 786908, at *2–3 (N.D. Cal. Mar. 20, 2008). Even assuming that this narrower interpretation is correct and applicable here, the Court concludes that because Watkins' claim is substantially dependent on an analysis of the CBA, it is preempted.

Defendants contend that the CBA requires interpretation of, and conflicts with, the alleged agreement. First, the CBA requires side contracts to be memorialized in a valid Deal Memorandum, and thus conflicts "with Watkins' allegations that a solely oral contract could govern his terms and conditions of employment." *Opp.* 7:16–23. Section 4-108 of the CBA provides:

> "Following the oral confirmation between Employer and a Freelance Director (or the Director's agent) of the rate of compensation and the starting date for a proposed employment of the Director, the Employer will deliver a 'deal memorandum' to the Guild and to the Director (or the Director's agent) prior to his or her employment. Such "deal memorandum" shall set forth at least the information contained in Exhibit "C-1" or "C-2," as applicable, attached hereto. The 'deal memorandum' submitted may contain further terms in addition to those specified in such Exhibits, including part or all of the terms of the employment contract."

*Basic Agreement* § 4-108, at 41. It also states: "In no event is any Director to commence services before delivery of the "deal memorandum" to the Guild, except in cases of bona fide emergency." *Id.* The Deal Memorandum, issued pursuant to the CBA, sets forth a start date, a "Guaranteed period" of Watkins' employ on *The Blacklist* of fifteen days, and salary. *See Director's Deal Memorandum*. Defendants argue that this language reveals that Watkins' allegation of a separate oral contract providing him with employment "for as long as he liked" and requiring "just cause" for his removal, contradicts the CBA which provides that agreements must be memorialized in a Deal Memorandum given to the Guild prior to employment. *See Opp.* 7. Plaintiffs respond that nothing in this Section states that *all* agreements must be set forth in the Deal Memorandum, or that such a Memorandum supersedes other agreements, and points to the language that the Deal Memorandum "*may* contain further terms." *Reply* 5.

In addition, Defendants argue that the CBA and Deal Memorandum conflict with Watkins' claim because the CBA does not reference "just cause" for termination, and provides other ways in which an employer may satisfy an obligation to provide employment for a guaranteed term. Defendants point to Section 6-101 of the CBA which provides that: "the obligation of the Employer upon entering into a contract for the employment of a Freelance

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-5821 PSG (MAAx) | Date | February 27, 2020 |
|----------|------------------------|------|-------------------|

| Title | Michael Watkins et al. v. Woodridge Productions, Inc. et al. |
|-------|----------------------------------------------------------------|

Director to furnish employment during any of the foregoing 'guarantee' periods of employment shall be wholly satisfied by the payment of the agreed salary for the applicable minimum period." *Basic Agreement* § 6-101, at 44.

Defendants have the better argument. First, whether Watkins could enter into an oral contract expanding his rights beyond those set forth in the Deal Memorandum requires interpretation of the CBA's provision regarding Deal Memorandums, specifically, whether that provision permits separate oral contracts to govern employment terms. Second, whether the agreement could modify the terms of the Deal Memorandum, such as by giving Watkins an indefinite employment as opposed to the "guaranteed" period set out in the Deal Memorandum, and whether the CBA's provisions provide an alternate means to the employer of satisfying an obligation to provide employment for the guaranteed term by paying the agreed salary, must be interpreted. These provisions reveal that the claim is substantially dependent on an analysis of the CBA.

Plaintiffs rely on distinguishable cases, including *Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683 (9th Cir. 2001), in which employees sued their employer alleging violation of their state privacy rights by installing video cameras in restrooms.[5] As Defendants argue, "CBA provisions such as those pertaining to the making of individual employment contracts, 'guaranteed' periods of employment, proper satisfaction of such guarantees, discharge of Directors and minimum salary payments must be directly confronted" in resolving this contract claim, unlike in *Cramer*, for instance, in which privacy rights regarding surreptitious video surveillance in restrooms were illegal under state law, and the bargaining agreement did not need to be interpreted to determine whether such privacy rights were invaded. *See Opp.* 15; *Cramer*, 255 F.3d at 688.[6]

---

[5] Notably, Watkins' claim does not assert a violation of a nonnegotiable right created by statute or public policy, like the right to be free from discrimination, nor is it a contract claim entered into by an employee not covered by a CBA, unlike many of the cases he cites. *See Opp.* 2:5–15, 14–16; *see, e.g.*, *Lingle*, 486 U.S. at 406 (involving a claim of retaliation in violation of state public policy).

[6] To the extent that Watkins relies on *Caterpillar Inc.*, 482 U.S. at 392, to support his position that his implied contract claim is not preempted and that Defendants' arguments amount to a defense of pre-emption, this reliance is unpersuasive. *See Mot.* 5, n.20, 23; *Opp.* 12. *Caterpillar* is inapplicable to the present circumstances because here, unlike in *Caterpillar*, Plaintiff did not negotiate an individual employment contract for a position not governed by the CBA at a time when he was not covered by the CBA. *Caterpillar*, 482 U.S. at 388–89; *see also Aguilera*, 223

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-5821 PSG (MAAx) | Date | February 27, 2020 |
|---|---|---|---|
| Title | Michael Watkins et al. v. Woodridge Productions, Inc. et al. | | |

Accordingly, Plaintiffs' breach of contract claim is preempted by § 301 of the LMRA.

### B.    Remaining Claims

To the extent that Plaintiffs' remaining state law claims are not subject to preemption, the Court nonetheless has supplemental jurisdiction over such claims. *See Opp.* 11. Watkins bases all of his causes of action on a specific set of events that took place at the time of his separation from employment with Defendants. *See generally FAC.* Those claims are sufficiently related to Plaintiffs' contract claims to form part of the same "case or controversy." *See* 28 U.S.C. § 1367.

### IV.    Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiffs' motion to remand.

---

F.3d 1015–16 (distinguishing *Caterpillar*).